**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Roger Myer; Estate of Rita Myer, ) | No. CV09-1404-PHX-JAT |
| ) | |
| Plaintiffs, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Progressive Preferred Insurance Company, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

Currently pending before the Court is Defendant Progressive Preferred Insurance Company's ("Progressive")[1] Motion for Summary Judgment (Doc. #29). For the reasons stated herein, the Court will grant the Motion.

**I.     BACKGROUND**

On April 29, 2007, Roger and Rita Myer (Roger Myer and the Estate of Rita Myer are referred to herein collectively as "Plaintiffs") were passengers in a vehicle driven by Leo Latka. Mr. Latka caused an automobile accident that resulted in injuries to Roger Myer and, ultimately, in Rita Myer's death. At the time of the accident, Mr. Latka had an insurance policy issued by Progressive (the "Policy"). The Policy had a combined single limit of liability coverage of $500,000 for each accident.

---

[1]After the parties' stipulated dismissal of Leo Latka and the Courts' dismissal of the fictitious defendants, Progressive is the sole remaining Defendant in this case.

Howard and Ada Marshall occupied the vehicle that collided with Mr. Latka's vehicle. Both of the Marshalls suffered injuries. Two other vehicles were involved in the accident, but sustained only minor impacts following the collision between Mr. Latka and the Marshalls.

At a May 20, 2008 mediation, all involved parties, whether injured in the accident, claiming property damage, or making claims on behalf of the decedent's estate, entered into a settlement agreement. Pursuant to the settlement, Progressive paid the entire liability limits of the Policy. Roger Myer received $117,000 for his bodily injury, emotional distress, and wrongful death claims.[2] The beneficiaries of Rita Myer's Estate received a total of $232,000.

Plaintiffs filed this action in state court against Mr. Latka for negligence and against Progressive for breach of contract and bad faith denial of their underinsured motorist claim. Progressive removed to this Court on June 30, 2009. The Court dismissed Leo Latka on September 21, 2009 (Doc. #22) per the parties' stipulation in the Joint Proposed Case Management Plan (Doc. #18).

Progressive filed the pending Motion for Summary Judgment (Doc. #29) on January 15, 2010. The parties agree that no material factual disputes exist. They disagree about whether the Policy's underinsured motorist ("UIM") provision covers Plaintiffs and, if it does, whether Progressive acted in bad faith in denying Plaintiffs' UIM claim.

## II.    LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, summary judgment is mandated, ". . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof

---

[2]The release signed by Roger Myer pursuant to the settlement specifically excluded the release of a claim for underinsured benefits under the Policy.

at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.    ANALYSIS AND CONCLUSION

As an initial matter, the Court notes that Plaintiffs alleged their Count I claim for negligence against only Leo Latka.  The Court has dismissed Mr. Latka per the parties' stipulation.  The Court therefore will dismiss Count I with prejudice.

The Court now turns to the remaining causes of action against Progressive.  Plaintiffs allege breach of contract and bad faith claims against Progressive.  They seek a declaration that they are entitled to coverage pursuant to the UIM provision of the Policy and seek damages for breach of contract and bad faith.

### A.    Coverage

Plaintiffs do not dispute that the plain language of the Policy excludes them from UIM coverage.  Plaintiffs instead argue that this exclusion violates Arizona law and public policy. The Policy provides in pertinent part:

> **PART III - UNINSURED AND UNDERINSURED MOTORIST COVERAGE**
>
> ****
>
> **INSURING AGREEMENT - UNDERINSURED MOTORIST COVERAGE**
>
> If **you** pay the premium for this coverage, **we** will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of **bodily injury**:
> 1. sustained by that **insured person**;
> 2. caused by an accident; and
> 3. arising out of the ownership, maintenance or use of an **underinsured motor vehicle**.
>
> **We** will pay under this Part III only after the limits of liability under all applicable bodily injury liability bonds and policies have been exhausted by payment of judgments or settlements.
>
> Any judgment or settlement for damages against an owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle** that arises out of a lawsuit brought without **our** written consent is not binding on **us**.

(Doc. #30-1, pp.10-11.)  The Policy defines "insured person" and "underinsured motor vehicle" for purposes of UIM coverage as:

When used in this Part III:

1.  "**Insured person**" means:
    a.  **you** or a **relative**;
    b.  any person while operating a **covered auto** with the permission of **you** or a **relative**;
    c.  any person **occupying**, but not operating, a **covered auto**;
    d.  any person who is entitled to recover damages covered by this Part III because of **bodily injury** sustained by a person described in a, b, or c above.

2.  "**Underinsured motor vehicle**" means a land or motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident, but the sum of all applicable limits of liability for **bodily injury** is less than the total damages for **bodily injury** resulting from the accident. An **underinsured motor vehicle** does not include any motorized vehicle or equipment:
    a.  operated on rails or crawler treads;
    b.  designed mainly for use off public roads, while not on public roads;
    c.  while located for use as a residence or premises;
    d.  shown on the **declarations page** of this policy, unless the injured **insured person** is **you** or a **relative** and **we** have paid that person under Part I- Liability To Others an amount that is less than the limit shown on the **declarations page** for coverage under the Part III; or
    e.  that is an **uninsured motor vehicle**.

(Doc. #30-1, p.11.)

The Policy's declarations page lists the vehicle driven by Mr. Latka on the day of the accident. The Policy defines "you" as a "a. person shown as a named insured on the **declarations page**; and b. the spouse of a named insured if residing in the same household." (Doc. #30-1, p.3.) The policy defines "relative" as a "person residing in the same household as **you**, and related to **you** by blood, marriage, or adoption, and includes a ward, stepchild or foster child. **Your** unmarried dependent children temporarily away from home will qualify as a **relative** if they intend to continue to reside in **your** household." (Doc. #30-1, p.2.)

Plaintiffs do not argue that they fall under the definition of "you" or "relative" for purposes of the Policy's UIM provision. Nor do Plaintiffs assert that the vehicle that Mr. Latka was driving during the accident was not listed on the declarations page of the Policy. They argue that despite the Policy's language, Arizona law and public policy mandate that

they receive coverage under the Policy's UIM provision.

Whether UIM coverage exists under the Policy is a question of law to be decided by the Court. *See, e.g., Sparks v. Republic Nat'l Life Ins. Co.*, 647 P.2d 1127, 1132 (Ariz. 1982). Generally, an insured bears the burden of demonstrating coverage under an insuring clause, and the insurer bears the burden of establishing the applicability of an exclusion. *Keggi v. Northbrook Property & Cas. Ins. Co.*, 13 P.3d 785, 788 (Ariz. Ct. App. 2000).

Plaintiffs argue that the Arizona statute requiring insurers to offer UIM coverage to policy holders mandates that the Policy provide them benefits under the UIM section. Section 20-259.01(B) of the Arizona Revised Statutes reads:

> Every insurer writing automobile liability or motor vehicle liability policies shall also make available to the named insured thereunder and shall by written notice offer the insured and at the request of the insured shall include within the policy underinsured motorist coverage which extends to and covers all persons insured under the policy, in limits not less than the liability limits for bodily injury or death contained within the policy. The selection of limits or rejection of coverage by a named insured or applicant on a form approved by the director shall be valid for all insureds under the policy. The completion of such form is not required where the insured purchases such coverage in an amount equal to the limits for bodily injury or death contained in the policy. The offer need not be made in the event of the reinstatement of a lapsed policy or the transfer, substitution, modification or renewal of an existing policy. At the request of the insured, the insured may purchase and the insurer shall then include within the policy underinsured motorist coverage that extends to and covers all persons insured under the policy in any amount authorized by the insured up to the liability limits for bodily injury or death contained within the policy.

Plaintiffs assert that because they are insured persons for some purposes under the Policy, then they must be insured persons for all purposes. The Arizona statue requires insurers to offer underinsured motorist coverage to an insured that would extend to and "cover[] all persons insured under the policy . . . ." A.R.S. §20-259.01(B). Plaintiffs argue it necessarily follows that the Policy must provide them UIM coverage because of their status as insured persons.

Arizona's UIM statute has a remedial purpose and must be construed liberally in favor of coverage, with narrow construction given to exclusions. *Taylor v. Travelers Indem. Co.*

*of Am.*, 9 P.3d 1049, 1053 (Ariz. 2000). Nonetheless, not every construction that denies coverage violates the purpose of the statute. *Stuart v. Ins. Co. of N. Am.*, 730 P.2d 255, 257 (Ariz. Ct. Ap. 1986).

The Arizona Supreme Court has voided an insurance policy that, by its terms, excluded the wife of the name insured from UIM coverage. *Taylor*, 9 P.3d at 1059. The *Taylor* court construed A.R.S. §20-259.01(B) to "mean what it says: Where there is insufficient liability coverage available to compensate for the actual damages sustained, the *named insured or a family member* injured in or by the family car and by the negligence of another insured may turn to his or her UIM coverage . . . ." *Id.* at 1056 (emphasis added); *see also Brown v. State Farm Mut. Auto. Ins. Co.*, 788 P.2d 56, 61 (Ariz. 1989)("Implicit in the nature of the UIM transaction contemplated by the statutes is the concept that UIM insurance provided by the insured's *own carrier* will protect him or her over and above the other insurance that may apply in a particular accident.")(emphasis added). In reaching this conclusion, the Arizona Supreme Court emphasized that the named insured had paid premiums for both liability and UIM coverage and that he and his family members therefore should be able to recover under both types of coverage purchased. *Id.* at 1054-1059.

The Arizona Supreme Court's concerns in *Taylor* are not present here. Plaintiffs did not purchase the Policy or pay any premiums for UIM coverage. They are strangers to the Policy – they are not related to Mr. Latka and do not reside with him.[3] Plaintiffs simply happen to be covered by the Policy under some circumstance. Excluding them from the UIM provisions does not deprive them of coverage for which they have paid.

Plaintiffs have not cited any authority for their contention that if a person is insured

---

[3]The status of an insured under a policy affects the expectation of coverage. People without a direct relationship to the insured, such as passengers of a vehicle for a limited time, do not have high reasonable expectations of coverage because they have paid no premiums. *Taylor*, 9 P.3d at 1058 n.9; *see also Alcala v. Mid-Century Ins. Co.* , 828 P.2d 1262, 1265 (Ariz. Ct. App. 1992)("Appellant had nothing to do with the purchase of the policy in question. She never had an insurable interest or expectancy under the policy. No coverage has been taken from her that she was entitled to receive.").

under any part of the policy, then the person must be insured for all purposes under the policy. Arizona case law does not support their assertion. "Public policy does not restrict the parties' right to agree on who is an insured." *Am. States Ins. Co. v. C&G Contracting, Inc.*, 924 P.2d 111, 116 (Ariz. Ct. App. 1996). A person may be an "insured" under a policy in some circumstances, but not an insured under other circumstances. *See id.* ("James Chambers was insured for liability under the C&G policy only when he was an 'anyone else,' . . . a status he attained only while using a covered auto . . .."); *see also Alcala*, 828 P.2d at 1264 ("[A]n insurance policy can define who will be an insured under the policy and under what circumstances coverage will be provided); *Reserve Ins. Co. v. Staats*, 453 P.2d 239, 243 (Ariz. Ct. App. 1969)( "While [] would have been classified as an insured if Walters had been driving an non-owned car, pursuant to provisions (a)(2) and (b)(3) set forth above, she has no status as an insured by application of provision (b)(iii), since at the time of the accident Walters was driving his own car.").

Nor have Plaintiffs cited a case holding that a policy provision that excludes unrelated passengers from UIM coverage violates A.R.S. §20-259.01(B). In fact, Arizona case law indicates the opposite. In *Duran v. Hartford Ins. Co.*, the Arizona Supreme Court rejected an injured passenger's claim for UIM benefits where that passenger had collected under the liability portion of the same policy. 772 P.2d 577 (Ariz. 1989). The *Duran* court held, "Nothing in the underinsurance statute . . . suggests any legislative intent to allow an injured passenger to 'stack' liability and UIM coverage so as to, in effect, increase the named insured's liability coverage." *Id.* at 578.

The Arizona Court of Appeals reached the same result in *Demko v. State Farm Mutual Automobile Insurance Company*, 65 P.3d 446 (Ariz. Ct. App. 2003). The plaintiff in *Demko*, an injured passenger, brought an action against the negligent driver's automobile insurer to recover UIM benefits. The appellate court reiterated that UIM benefits are not intended to expand a tortfeasor's liability insurance limits, while distinguishing between a family member's claim against UIM benefits and an unrelated passenger's claim. *Id.* at 448-49. The court held that allowing the injured passenger to recover under the driver's UIM

coverage would "in effect, be providing [driver] with additional liability coverage; a result which is not supported by the cases or the statute." *Id.* at 449; *see also Cundiff v. State Farm Mut. Auto. Ins. Co.*, 145 P.3d 638, 644 (Ariz. Ct. App. 2006)("A provider of UIM insurance, however, is not the alter ego of the tort-feasor. It does not insure the tort-feasor against liability; it insures its policyholder against the risk of inadequate compensation for his compensable injuries.")(internal quotations omitted), vacated on other grounds by *Cundiff v. State Farm Mut. Auto. Ins. Co.*, 174 P.3d 270 (Ariz. 2008).

The unambiguous terms of the Policy exclude Plaintiffs from coverage under the UIM section, and the Court finds that public policy does not mandate UIM coverage for Plaintiffs under the circumstances here. Plaintiffs did not pay any premiums for the Policy, and they have no reasonable expectation of recovery under a UIM provision designed to "enable the consumer to protect *himself and family members* against the possibility that, in any given accident, there will be no or insufficient liability coverage to compensate for the actual damages sustained." *Taylor*, 9 P.3d at 1055 (emphasis added). To allow strangers to the Policy like Plaintiffs to recover UIM benefits would essentially provide additional liability coverage to Mr. Latka.

The Court therefore finds that Plaintiffs are not covered by the UIM provision of the Policy and will award summary judgment to Progressive on the declaratory and breach of contract causes of action.

### B.     BAD FAITH AND ATTORNEYS' FEES

The Court has determined that the Policy's UIM section does not provide coverage to Plaintiffs. Consequently, Progressive cannot have acted in bad faith in denying UIM benefits to Plaintiffs. *Manterola v. Farmers Ins. Exch.*, 30 P.3d 639, 646 (Ariz. Ct. App. 2001). The Court therefore grants summary judgment to Progressive on Plaintiffs' bad faith claim.

Even if the UIM provision of the Policy covers Plaintiffs, the Court finds as a matter of law that Progressive did not act in bad faith when it denied Plaintiffs' UIM claims. Arizona courts acknowledge that, "in buying insurance an insured usually does not seek to

realize a commercial advantage but, instead, seeks protection and security from economic catastrophe." *Rawlings v. Apodaca*, 726 P.2d 565, 570 (Ariz. 1986) (internal citations omitted). One of the benefits that flows from a first-party insurance contract, "is the insured's expectation that his insurance company will not wrongfully deprive him of the very security for which he bargained or expose him to the catastrophe from which he sought protection. Conduct by the insurer which does destroy the security or impair the protection purchased breaches the implied covenant of good faith and fair dealing implied in the contract." *Id*. at 571.

Although insurers do not owe fiduciary duties to their insureds, they do owe them some duties of a fiduciary nature; including, the duties of equal consideration, fairness, and honesty. *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 279 (Ariz. 2000). Insurers must play fairly with their insureds. *Id*. An insurer commits bad faith when it, "'intentionally denies, fails to process or pay a claim without a reasonable basis.'" *Id*. (quoting *Noble v. Nat'l Am. Life Ins. Co.*, 624 P.2d 866, 868 (Ariz. 1981)).

But if an insurance claim is fairly debatable, the insurer cannot be liable for acting in bad faith for denying a claim. *Lasma Corp. v. Monarch Ins. Co. of Ohio*, 764 P.2d 1118, 1122 (Ariz. 1988). "[I]t is clear that an insurer may defend a fairly debatable claim . . . But in defending a fairly debatable claim, an insurer must exercise reasonable care and good faith." *Zilisch*, 995 P.2d at 279. An insurer may challenge fairly debatable claims, but the insurer's belief in fair debatability may be a question of fact for a jury. *Id*. "The appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Id*. at 280.

Given the Policy's explicit language and the lack of an on-point Arizona case disallowing the sort of exclusion here, the Court finds that Plaintiffs' claim for UIM benefits was fairly debatable. No reasonable juror could find that the Plaintiffs' entitlement to UIM benefits, given the Policy language, was not at least "fairly debatable." And Plaintiffs have

introduced no evidence in response to summary judgment that would indicate Progressive had anything other than a good faith belief in the debatability of Plaintiffs' UIM claims.

Plaintiffs simply have not introduced any evidence from which a reasonable juror could conclude that Progressive acted unreasonably and knew it was acting unreasonably when it investigated, evaluated, and processed Plaintiffs' UIM claims. Plaintiffs merely argue that case law authority did not support Progressive's position and that the Court cannot reach the bad faith claim because the parties have not conducted discovery. But parties obviously can have good faith disagreements about the interpretation of the law and Plaintiffs did not argue pursuant to Federal Rule of Civil Procedure 56(f) that they could not oppose the motion for summary judgment for specific reasons.

Plaintiffs simply predict that discovery will present some evidence of bad faith. That is insufficient to survive a motion for summary judgment. In responding to a motion for summary judgment, a party "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)). The Court grants summary judgment to Progressive on Plaintiffs' bad faith claim for the additional reason that Plaintiffs have not demonstrated Progressive had anything other than a good faith belief in the debatability of the UIM claims or that Progressive acted unreasonably in investigating and evaluating the claims.

Because the Court has granted summary judgment to Progressive on Plaintiffs' bad faith claim, their only claim for which punitive damages are awardable, Plaintiffs obviously cannot recover punitive damages.

Progressive has requested its reasonable attorneys' fees and costs. At this time, the Court will deny that request without prejudice to refiling. Progressive may file a motion for attorneys' fees pursuant to Local Rule of Civil Procedure 54.2, which the Court will entertain.

Accordingly,

IT IS ORDERED Dismissing Plaintiffs' first cause of action for negligence.

IT IS FURTHER ORDERED Granting Defendants' Motion for Summary Judgment (Doc. #29) on all of Plaintiffs' remaining claims.  The Clerk of the Court shall enter judgment for Progressive and against Plaintiffs.

DATED this 13th day of July, 2010.

James A. Teilborg
United States District Judge